UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROYAL BUTTERFLY, LLC, | ) |
| | ) |
| *Plaintiff*, | ) 10 CV 1366 (Jones) |
| | ) ECF Case |
| - against - | ) |
| | ) **ANSWER, AFFIRMATIVE DEFENSES** |
| | ) **AND COUNTERCLAIMS** |
| BARNES BAY DEVELOPMENT, LTD., | ) |
| INC., KOR HOTEL MANAGEMENT, LLC, | ) |
| KOR REALTY GROUP, LLC, and | ) |
| BRADFORD KORZEN, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

Defendants Barnes Bay Development, Ltd., Inc. ("Barnes Bay"), Kor Hotel Management, LLC ("Hotel Management"), Kor Realty Group, LLC ("Realty") and Bradford Korzen ("Korzen") (collectively, "Defendants"), through their counsel, file this Answer, Affirmative Defenses and Counterclaims (Defendants' "Answer and Counterclaims") in response to Plaintiff's Complaint ("Complaint") as follows:

I.

**PRELIMINARY STATEMENT**

Defendants file their Answer and Counterclaims in order to protect Barnes Bay's contractual rights under the Purchase and Sale Agreement (the "Agreement").[1] Plaintiff entered into the Agreement with Barnes Bay to purchase a luxury condominium property (the "Property"). Plaintiff's principal, Michael Hirtenstein, a well-known collector of luxury properties, is equally well-known for reneging on contractual commitments in order to renegotiate a lower purchase price in the current down-market. Examples of Hirtenstein's real

---

[1] A true and correct copy of the Purchase and Sale Agreement with Addendums, dated May 21, 2005, is attached hereto as Exhibit A and incorporated herein by reference.

estate transactions include a recent transaction in which Hirtenstein renegotiated the purchase of a number of luxury properties located at One York in Tribeca/Soho, New York. According to media reports, Hirtenstein "walked away" from the purchase at a price of more than $25 million – forfeiting his $7 million deposit. Thereafter, according to the same media reports, Hirtenstein recast the transaction with the developer giving Hirtenstein a $7 million credit toward the ultimate purchase price on account of Hirtenstein's originally forfeited $7 million deposit.

Hirtenstein's efforts herein are contrary to the Agreement. Only Barnes Bay is in privity with Plaintiff – nonetheless, Plaintiff seeks relief from all of the Defendants. In addition, Barnes Bay and Plaintiff have previously contracted in the Agreement (which, at the time, was acceptable to Hirtenstein and his counsel) to each assume certain risks. Specifically, Barnes Bay assumed the risk that Hirtenstein might abandon his purchase and, in that case, Barnes Bay could elect to: (i) seek recovery of the full purchase price and retain or recover two deposits totaling $1,999,000.00 on account of that purchase price; (ii) retain or recover the two deposits as monies to be applied to Barnes Bay's damages; or (iii) retain or recover the two deposits as liquidated damages. For his part, Hirtenstein assumed the risk that Barnes Bay may require Plaintiff to forfeit $1,999,000.00 in deposits should Hirtenstein determine that he no longer wished to close on the purchase or, alternatively, to pay the full purchase price. Now, by Plaintiff's lawsuit, Hirtenstein is seeking to rewrite the Agreement and, in doing so, has caused Plaintiff to breach its contractual obligations. Accordingly, Defendants file this Answer and Counterclaims in order to defend themselves against Plaintiff's meritless claims and to protect Barnes Bay's contractual rights under the Agreement.

## II.

## **DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT**

1. Defendants deny all allegations in Paragraph 1 of the Complaint because Plaintiff is not organized or existing under the laws of the State of New York but assert, based upon information and belief, that Plaintiff's sole member is a New York resident.

2. Defendants deny all allegations in Paragraph 2 of the Complaint except that Defendants admit that Barnes Bay is a corporation organized under the laws of Anguilla.

3. Defendants deny all allegations in Paragraph 3 of the Complaint except that Defendants admit that Hotel Management is a limited liability company.

4. Defendants deny all allegations in Paragraph 4 of the Complaint except that Defendants admit that Hotel Management is a limited liability company.

5. Defendants deny all allegations in Paragraph 5 of the Complaint except that Defendants admit that Realty is a limited liability company organized under the laws of the State of California.

6. Defendants deny all allegations in Paragraph 6 of the Complaint except that Defendants admit that Korzen is a resident of the State of California.

7. Defendants lack sufficient knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 7 of the Complaint.

8. Defendants deny all allegations in Paragraph 8 of the Complaint.

9. Defendants deny all allegations in Paragraph 9 of the Complaint.

10. Defendants deny all allegations in Paragraph 10 of the Complaint.

11. Defendants deny all allegations in Paragraph 11 of the Complaint except that Defendants admit that Barnes Bay developed and operates The Villas at Anguilla.

12. Defendants repeat and re-allege their prior answers.

13. Defendants admit all allegations in Paragraph 13 of the Complaint.

14. Defendants admit all allegations in Paragraph 14 of the Complaint.

15. Defendants deny all allegations in Paragraph 15 of the Complaint.

16. Defendants deny all allegations in Paragraph 16 of the Complaint.

17. Defendants deny all allegations in Paragraph 17 of the Complaint except that Defendants admit that: (i) the closing of the sale of the Property did not occur by December 31, 2008; and (ii) Plaintiff sent Barnes Bay a letter, dated March 20, 2009.

18. Defendants deny all allegations in Paragraph 18 of the Complaint.

19. Defendants deny all allegations in Paragraph 19 of the Complaint.

20. Defendants repeat and re-allege their prior answers.

21. Defendants deny all allegations in Paragraph 21 of the Complaint.

22. Defendants deny all allegations in Paragraph 22 of the Complaint.

23. Defendants deny all allegations in Paragraph 23 of the Complaint.

24. Defendants deny all allegations in Paragraph 24 of the Complaint.

25. Defendants repeat and re-allege their prior answers.

26. Defendants deny all allegations in Paragraph 26 of the Complaint.

27. Defendants deny all allegations in Paragraph 27 of the Complaint.

28. Defendants deny all allegations in Paragraph 28 of the Complaint.

29. Defendants deny all allegations in Paragraph 29 of the Complaint.

30. Defendants repeat and re-allege their prior answers.

31. Defendants admit all allegations in Paragraph 31 of the Complaint.

32. Defendants deny all allegations in Paragraph 32 of the Complaint.

33. Defendants deny all allegations in Paragraph 33 of the Complaint.

34. Defendants deny all allegations in Paragraph 34 of the Complaint.

35. Defendants deny all allegations in Paragraph 35 of the Complaint.

36. Defendants deny all allegations in Paragraph 36 of the Complaint.

## III.

### DEFENDANTS' AFFIRMATIVE DEFENSES

#### FIRST AFFIRMATIVE DEFENSE

37. The Courts of the State of New York lack personal jurisdiction over Defendants.

#### SECOND AFFIRMATIVE DEFENSE

38. Plaintiff fails to state a claim upon which relief may be granted.

#### THIRD AFFIRMATIVE DEFENSE

39. This case should be dismissed on forum non conveniens grounds.

#### FOURTH AFFIRMATIVE DEFENSE

40. The claims are barred, in whole or in part, by the principles of waiver and/or estoppel.

#### FIFTH AFFIRMATIVE DEFENSE

41. To the extent any claim is moot or not ripe for adjudication, that claim should be dismissed.

#### SIXTH AFFIRMATIVE DEFENSE

42. Plaintiff's conduct caused or contributed to cause the damages alleged in each of Plaintiff's claims.

#### SEVENTH AFFIRMATIVE DEFENSE

43. Plaintiff's claims are barred, in whole or in part, by Plaintiff's prior breach.

### EIGHTH AFFIRMATIVE DEFENSE

44. Plaintiff's claims are barred, in whole or in part, by Plaintiff's unclean hands and lack of good faith.

### NINTH AFFIRMATIVE DEFENSE

45. Plaintiff's claims should be dismissed because the conduct, negligence or omissions of a third party caused or contributed to cause the damages alleged in each of Plaintiff's claims.

### TENTH AFFIRMATIVE DEFENSE

46. Plaintiff's claims for various relief are barred to the extent Plaintiff has failed to mitigate the damages alleged in each of Plaintiff's claims.

### IV.

### DEFENDANTS' COUNTERCLAIMS

Defendants file the following counterclaims upon personal knowledge as to their own acts, information, and belief as to all other matters, as follows:

**A.  Relevant Parties And Persons**

47. Plaintiff Royal Butterfly, LLC is a limited liability company organized under the laws of the State of Delaware.

48. Michael Hirtenstein is Plaintiff's sole member and is a resident of the State of New York.

49. Stuart Antell is the attorney who signed the Agreement in Anguilla on behalf of Plaintiff as Mr. Hirtenstein's attorney-in-fact. Mr. Antell is a partner at the law offices of Ferber Chan Essner & Coller, LLP, counsel for Plaintiff.

50. Defendant Barnes Bay Development, Ltd., Inc. is a corporation organized under the laws of the island of Anguilla.

51.  Defendant Kor Hotel Management, LLC is a limited liability company organized under the laws of the State of Delaware.

52.  Defendant Kor Realty Group, LLC is a limited liability company organized under the laws of the State of California.

53.  Defendant Bradford Korzen is a resident of the State of California.

**B.  Factual Background**

   **1.  Plaintiff and Barnes Bay enter into the Agreement for the purchase of a luxury condominium.**

54.  On May 21, 2005, Plaintiff, a sophisticated party represented by counsel, purchased the Property pursuant to the Agreement for the purchase price of $5,550,000.

55.  Barnes Bay developed the Property and sold the Property to Plaintiff in Anguilla under the terms of the Agreement.

56.  Plaintiff and Barnes Bay executed the Agreement in Anguilla at a sales event hosted by Barnes Bay. Mr. Hirtenstein's attorney-in-fact, Stuart Antell of Ferber Chan Essner & Coller, LLP, signed the Agreement in Mr. Hirtenstein's name as Plaintiff's principal.

57.  Pursuant to the Agreement, Plaintiff paid Barnes Bay a $1 million deposit on the Property (the "Deposit") at the time the parties executed the Agreement.

   **2.  Plaintiff fails to pay the additional deposit due to Barnes Bay.**

58.  Paragraph 2 of the Agreement provides that Plaintiff owes an additional deposit of $999,000, payable fifteen (15) days after Barnes Bay gives Plaintiff written notice that the Property's roof has been secured and completed.

59.  Plaintiff has failed to pay Barnes Bay the additional $999,000 deposit required by the Agreement.

### 3. **Delays beyond Barnes Bay's control extend the date of closing.**

60. Paragraph 15(c) of the Addendum to the Agreement provides that the closing on the Property would occur on the latter of the Agreement's anticipated closing date (May 2007) or by December 31, 2008, or a later date if related to delays beyond Seller's control. Specifically, the Agreement defines this "Closing Date" as "subject to delays beyond the reasonable control of Seller."

61. In addition, paragraph 4(b) of the Agreement provides that the Closing Date is subject to the Agreement's force majeure clause, which states:

> Seller shall be entitled to an extension of this deadline for the Closing Date for delays which are outside of Seller's reasonable control, such as acts of God, inclement weather, labor or material shortages, governmental action or inaction, riot, insurrection, acts of terrorism, or war. If Seller elects to extend Closing for any reason set forth in the proviso to the proceeding sentence, Seller shall endeavor to provide Purchaser with notice of that election within ten (10) business days of the event giving rise to the extension right together with a reasonably detailed explanation of the basis for such extension.

62. Paragraph 9(b) of the Agreement states that the Property is substantially completed when it is sufficiently complete, except for minor interior finish items, and when the "Minimum Service Components" are in place for use. Pursuant to paragraph 5(d) of the Agreement, Minimum Service Components include beach services, food and beverage services, hotel services, and drop-off services.

63. In late June 2007, the laborers working on the Property went on strike and construction halted. In July 2007, Barnes Bay sent all purchasers – including Plaintiff – a letter, which gave the requisite notice and explained the labor issues and the construction delays.

64. After months of delay caused by the labor strike – a delay beyond Barnes Bay's control – Barnes Bay sent Plaintiff a follow-up letter on April 24, 2008, stating that the labor

challenges facing the project appeared to have been rectified. In that letter, Barnes Bay stated that it anticipated that the first closings would be underway in early December 2008.

65. On May 29, 2008, Barnes Bay sent Plaintiff an additional letter stating that construction on the Property "may be somewhat delayed due to the labor issues," which Barnes Bay described in previous communications to Plaintiff.

66. On October 14-15, 2008, Hurricane Omar (a category three storm) hit Anguilla. On October 23, 2008, Barnes Bay sent a letter to Plaintiff providing an update regarding the hurricane damage and giving notice of the delays that this natural disaster imposed on the construction project.

67. Thereafter, in early December 2008, Barnes Bay sent a letter to Plaintiff giving notice that Barnes Bay was extending the Closing Date from December 31, 2008 to March 2009 as a result of the delays beyond Barnes Bay's control.

**4.   Plaintiff purports to terminate the Agreement and files the instant action.**

68. On March 20, 2009, Plaintiff sent a letter to Barnes Bay purporting to terminate the Agreement and demanding return of the Deposit.

69. On July 21, 2009, Plaintiff filed this lawsuit in the Supreme Court of the State of New York against Defendants and Citigroup, Inc., one of Barnes Bay's lenders, for breach of contract seeking return of its Deposit.

70. On September 24, 2009, Barnes Bay sent Plaintiff a letter stating that the Property was substantially complete.

71. On January 21, 2010, the Supreme Court of the State of New York dismissed Plaintiff's claims against Citigroup, Inc. and Defendants removed this matter to this Court.

## V.

## DEFENDANTS' CLAIMS

A.   **Count 1:  Breach Of Contract Against Plaintiff**

72.   Defendants repeat and re-allege the allegations of paragraphs 47 through 71.

73.   On May 21, 2005, Plaintiff agreed to purchase the Property pursuant to the Agreement for the purchase price of $5,550,000.

74.   The Agreement is a valid, enforceable contract supported by consideration.

75.   Barnes Bay has performed its obligations under the Agreement and has satisfied and fulfilled all conditions precedent to the performance of Plaintiff's obligations under the Agreement.

76.   Plaintiff breached its contractual obligations and duties owed to Barnes Bay under the Agreement by failing to pay the additional deposit of $999,000 required by the Agreement and by purporting to terminate the Agreement and demanding return of the Deposit before the anticipated Closing Date.

77.   Barnes Bay has been injured as a direct and proximate result of the breach of contract.

78.   Barnes Bay seeks all allowable relief including, without limitation, specific performance, damages, including actual and special damages, and attorney's fees and costs.

B.   **Count 2:  Claim For Attorney's Fees (Contractual Fees And Costs)**

79.   Defendants repeat and re-allege the allegations of paragraphs 47 through 78.

80.   The Agreement is a valid, enforceable contract, supported by consideration.

81.   Barnes Bay has performed its obligations under the Agreement and has satisfied and fulfilled all conditions precedent to the performance of Plaintiff's obligations under the Agreement.

82. Plaintiff breached its contractual obligations and duties owed to Barnes Bay under the Agreement and challenged Barnes Bay's entitlement to retain and recover the deposits Plaintiff is required to pay Barnes Bay under the Agreement.

83. Specifically, Paragraph 15(b) of the Agreement states that Barnes Bay may recover from Plaintiff all attorney's fees and other court costs and collection expenses that Barnes Bay may incur to recover or retain the deposits Plaintiff paid and owes Barnes Bay with interest thereon if Plaintiff challenges Barnes Bay's entitlement to those deposits.

84. Barnes Bay has been injured as a direct and proximate result of the breach of contract because Plaintiff has withheld payment of the additional $999,000 deposit and challenged Barnes Bay's right to retain and recover the deposits.

85. Accordingly, pursuant to the Agreement, Barnes Bay seeks from Plaintiff all of Barnes Bay's attorney's fees, court costs, and collection expenses incurred in retaining and seeking recovery of all the deposits owed to Barnes Bay, with interest.

## VI.

## REQUEST FOR RELIEF

WHEREFORE, Defendants respectfully request that the Court enter an order:

a. Dismissing each of Plaintiff's claims with prejudice;

b. Granting each of Defendants' claims and awarding Defendants judgment on all of its claims;

c. Compelling Plaintiff's specific performance under the Agreement;

d. Awarding Barnes Bay and, alternatively, all Defendants, damages, including actual and special damages, including compensatory, consequential, and punitive damages;

e. Awarding Defendants pre-judgment and post-judgment interest at the highest rate(s) allowed by law pursuant to the Agreement;

c.  Awarding Defendants the costs of this action, including attorney's fees, costs of court, and collection expenses with pre-judgment and post-judgment interest at the highest rate(s) allowed by law; and

d.  Awarding Defendants such further relief as the Court deems just and proper.

Dated: February 26, 2010

Respectfully submitted,

**BICKEL & BREWER**

By: _____
William A. Brewer III (WB4805)
Luke McGrath (LM8070)
Catherine Pastrikos (CP3300)
767 Fifth Avenue, 50th Floor
New York, New York 10153
Tel: (212) 489-1400
wab@bickelbrewer.com
lzm@bickelbrewer.com
cap@bickelbrewer.com

**ATTORNEYS FOR DEFENDANTS**
*Barnes Bay Development, Ltd., Inc., Kor Hotel Management, LLC, Kor Realty, LLC, and Bradford Korzen*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROYAL BUTTERFLY, LLC,<br><br>              *Plaintiff,*<br><br>    - against -<br><br>BARNES BAY DEVELOPMENT, LTD.,<br>INC., KOR HOTEL MANAGEMENT, LLC,<br>KOR REALTY GROUP, LLC, and<br>BRADFORD KORZEN,<br><br>              *Defendants.* | Case No. 10 CV 1366 (Jones)<br>ECF Case<br><br>**CERTIFICATE OF SERVICE FOR DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** |

This is to certify that on February 26, 2010, a true and correct copy of Defendants' Answer, Affirmative Defenses and Counterclaims was served on counsel for Plaintiff Royal Butterfly, LLC through email and U.S. Mail at the following address:

Robert Kaplan, Esq.
Ferber Chan Essner & Coller, LLP
530 Fifth Avenue
23rd Floor
New York, New York 10036
rkaplan@ferberchan.com
**ATTORNEYS FOR PLAINTIFF**

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 26 day of February 2010.

_____
Catherine Pastrikos